Robert A. Sparks
1552 Noble Street
Fairbanks, Alaska 99701
(907) 451-0875
(907) 451-9385
sparkslawoffice@yahoo.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| EMILIE WOODWARD<br><br>Plaintiff,<br><br>vs.<br><br>ACCESS ALASKA, INC.<br><br>Defendant. | ) |

Case No.:

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Emilie Hayden Lewis, also known as Emilie Woodward ("Plaintiff"), by and through undersigned counsel, alleges as follows against Defendant Access Alaska, Inc. ("Defendant" or "Access Alaska"):

I. NATURE OF THE ACTION

1. This is a civil action for damages and other appropriate relief brought by Plaintiff against her former employer, Defendant, Access Alaska Inc. for disability discrimination and retaliation in violation of Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101-12213 ("ADA"). Defendant discharged Plaintiff from her position as a Direct Service Case Manager shortly after she returned from disability-related medical leave, based on shifting and

pretextual accusations of misconduct.

II. JURISDICTION AND VENUE

2. This Court has federal-question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, and jurisdiction under 42 U.S.C. § 12117(a), which incorporates the enforcement procedures set forth at 42 U.S.C. § 2000e-5.

3. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Fairbanks, Alaska, within this District, and because Defendant maintains a place of business and employs individuals within this District.

4. Plaintiff has satisfied all conditions precedent to filing this action. On or about May 20, 2026, Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), which was assigned Charge No. 551-2026-00742, alleging discrimination and retaliation on the basis of disability in violation of the ADA.

5. On June 2, 2026, the EEOC's Seattle Field Office issued a Determination and Notice of Rights, notifying Plaintiff of her right to sue Defendant on the charge. This Complaint is filed within ninety (90) days of Plaintiff's receipt of that Notice, as required by 42 U.S.C. § 2000e-5(f)(1), as incorporated by 42 U.S.C. § 12117(a). See Exhibit "A" hereto.

III. PARTIES

6. Plaintiff Emilie Hayden Lewis, also known as Emilie Woodward, is, and at all times relevant to this Complaint was, a resident of Fairbanks, Alaska.

7. Defendant Access Alaska, Inc. is, on information and belief, a nonprofit corporation authorized to do business in the State of Alaska, with its headquarters located at 1217 E. 10th Avenue, Anchorage, Alaska 99501, and operating, among other locations, an office at 975 Van Horn Road, Suite 6, Fairbanks, Alaska 99701, at which Plaintiff was employed.

8. At all relevant times, Defendant employed fifteen (15) or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and is therefore an "employer" within the meaning of 42 U.S.C. § 12111(5) and subject to the requirements of the ADA.

IV. FACTUAL ALLEGATIONS

9. Defendant hired Plaintiff on or about August 19, 2025, for the position of Direct Service Case Manager, based out of Defendant's Fairbanks office, reporting to supervisor Darnell Cole, with Executive Director Eric Gurley as skip-level supervisor. Plaintiff's job duties included creating and administering client-satisfaction surveys for Defendant's clients throughout Alaska.

10. During the interview process, before she began working for Defendant, Plaintiff disclosed to Defendant's interviewer and to Mr. Cole that she required spinal surgery and would need to take medical leave.

11. Defendant hired Plaintiff with knowledge of her impending surgery and need for leave. Upon hiring Plaintiff, Defendant agreed to issue her a laptop and to permit her to work remotely following her surgery and recovery.

12. Plaintiff worked on-site at Defendant's Van Horn Road office until approximately two days before her scheduled surgery, and kept Defendant informed of the anticipated date of her procedure as soon as it was scheduled.

13. Plaintiff underwent spinal surgery on or about September 15, 2025, and was thereafter unable to work for approximately two weeks due to the surgery and required recovery and medication.

14. Throughout her medical leave, Plaintiff remained in contact with Mr. Cole, who was kept informed of her recovery and anticipated return to remote work.

15. On or about September 26, 2025, Plaintiff notified Defendant that she had been medically cleared to return to work remotely, and provided a medical release as requested.

16. On or about September 27, 2025, when Plaintiff attempted to log in to resume her job duties, she discovered that her access to the systems and tools necessary to perform her position, including the client survey tool, had been disabled.

17. Plaintiff promptly reported the access problem to Mr. Cole, who was unable to resolve it and stated that he would follow up with Defendant's human resources department.

18. Shortly thereafter, a member of Defendant's human resources staff, identified to Plaintiff as "EvaJo," contacted Plaintiff and accused her, in a hostile manner, of lying about her surgery and medical leave in order to take paid leave to get married. Plaintiff had not gotten married, had no intention of doing so, and had made no such representation to Defendant. On information and belief, Defendant's human resources staff had confused Plaintiff with a different employee.

19. Plaintiff promptly sent Defendant's human resources representative documentation from her physician substantiating her surgery and medical leave, and explained that Defendant appeared to have confused her with someone else. Plaintiff did not receive a response for several days despite multiple follow-up attempts.

20. When Plaintiff again followed up, Defendant's human resources representative raised a new and different accusation — that Plaintiff had not submitted her Form I-9 employment eligibility verification paperwork — even though Plaintiff had, in fact, submitted that paperwork on approximately her second day of employment and had already received a paycheck. Plaintiff again sent the requested documentation and received no further response.

21. Having received no resolution from human resources, and with her system access still locked, Plaintiff escalated the matter in writing to Defendant's Executive Director, Eric Gurley, explaining the situation and asking for assistance. Mr. Gurley did not respond to Plaintiff.

22. On or about October 9, 2025, the day after Plaintiff wrote to Mr. Gurley, Plaintiff received a telephone call from Defendant informing her that her employment was terminated for allegedly lying about her surgery in order to obtain paid medical leave.

23. Defendant's representative stated that Defendant would send someone to retrieve the laptop it had issued to Plaintiff; Plaintiff instead returned the laptop to Defendant's office in person.

24. When Plaintiff returned the laptop, a Defendant manager presented her with a document stating that she was being discharged for failing to submit her Form I-9 documentation — a reason different from the one given to her by telephone the day before, and one Plaintiff knew to be false because she had already submitted that documentation months earlier. Plaintiff declined to sign the document.

25. Plaintiff did not receive her final paycheck for hours she had worked, and Defendant did not respond to her subsequent calls and messages seeking an explanation for her termination.

26. On information and belief, no other Direct Service Case Manager reporting to Mr. Cole at Defendant's Fairbanks location was disciplined or discharged on similar grounds during the relevant period.

27. Defendant's stated reasons for terminating Plaintiff's employment were false, inconsistent, and pretextual, and the true reason for her discharge was her disability, her associated need for medical leave and a workplace accommodation, and/or her opposition to and rebuttal of Defendant's false accusations concerning that leave.

28. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered lost wages and benefits, emotional distress, humiliation, and other damages, and will continue to suffer such damages.

## <u>V. FIRST CAUSE OF ACTION Disability Discrimination in Violation of the ADA, 42 U.S.C. § 12112</u>

29. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

30. At all relevant times, Plaintiff had a physical impairment, a record of a physical impairment, and/or was regarded by Defendant as having a physical impairment, within the meaning of the ADA, 42 U.S.C. § 12102, related to her spinal condition and surgery.

31. Plaintiff was a qualified individual capable of performing the essential functions of her position, with or without reasonable accommodation.

32. Defendant discharged Plaintiff because of her disability, her record of a disability, and/or its perception of her as disabled, in violation of 42 U.S.C. § 12112(a).

33. Defendant's asserted reasons for discharging Plaintiff were false, inconsistent, and pretextual for unlawful discrimination.

34. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered, and continues to suffer, lost wages and benefits, emotional distress, humiliation, and other compensatory damages, in an amount to be proven at trial.

35. Defendant's conduct was undertaken with malice or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

## VI. SECOND CAUSE OF ACTION Retaliation in Violation of the ADA, 42 U.S.C. § 12203

36. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

37. Plaintiff engaged in activity protected under the ADA, including requesting and using disability-related medical leave and a reasonable accommodation of remote work, and providing

documentation refuting Defendant's false accusations regarding that leave.

38. Defendant subjected Plaintiff to adverse employment action, including termination of her employment, shortly after and because of her protected activity.

39. A causal connection exists between Plaintiff's protected activity and Defendant's adverse action, as shown by, among other things, the close temporal proximity between Plaintiff's return from medical leave and her termination, and Defendant's shifting and pretextual justifications for that termination.

40. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered, and continues to suffer, lost wages and benefits, emotional distress, humiliation, and other compensatory damages, in an amount to be proven at trial.

**PRAYER FOR RELIEF**

*WHEREFORE,* Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and award:

A. Back pay and lost benefits, with prejudgment interest;

B. Front pay in lieu of reinstatement, or reinstatement to a comparable position, as appropriate;

C. Compensatory damages for emotional distress, humiliation, and other non-pecuniary losses;

D. Punitive damages, to the extent permitted by law;

E. Reasonable attorneys' fees, expert fees, and costs pursuant to 42 U.S.C. § 12205;

F. Pre- and post-judgment interest as allowed by law; and

G. Such other and further relief as the Court deems just and proper.

DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

DATED this 31st day of August, 2026, at Fairbanks, Alaska.

THE LAW OFFICE OF ROBERT A. SPARKS

/s/ Robert A. Sparks
Robert A. Sparks
Attorney for Plaintiff
Emilie Woodward
AK Bar No.: 8611139